(6 Misc. Rep. 548.)

·A. P. & W. E. KELLY CO. et al. v. CONLON et al.

(Supreme Court, Special Term, Niagara County. January, 1894.)

WHARVES—LIABILITY FOR CHARGES.
    Lumber sold by defendants to F. under an agreement that the purchase money should be secured by wharf receipts was stored on plaintiffs' dock after negotiations between plaintiffs, defendants, and F., and receipts were given stating that the lumber was received from defendants, and held subject to their order, and at their risk, at a certain rate of dockage and storage. The terms used in the receipts were discussed by the parties, and fully understood by them. *Held*, that the real agreement was that expressed in the receipts, and that defendants, by accepting the receipts, agreed to pay the dockage and storage charges.

Action by the A. P. & W. E. Kelly Company and another against J. & T. Conlon, copartners, for dockage and storage of lumber. Judgment for plaintiffs.

Simpson & Dudley, for plaintiffs.
Ely & Dudley, for defendants.

WARD, J. In November, 1890, A. P. & W. E. Kelly Company, a corporation, was transacting the lumber business at Tonawanda, N. Y., and the plaintiff Asa K. Silverthorn was their manager and principal agent at that place. The defendants at that time were copartners in the lumbering business, located at Thorold, Ontario. On the 18th of November the defendants had a large quantity of lumber,—a portion on the steam barge Africa, a portion on the lake barge Maggie, a portion on the steamer Erin, of St. Catharines, and another portion on the bark Severn, of Toronto. The aggregate of the lumber upon the Severn, the Africa, and the Erin was 1,216,574 feet. One William A. Frazer, who resided at Suspension Bridge, N. Y., was also engaged in the lumbering business, and at the time last mentioned he was negotiating with the defendants to purchase from them this lumber, and desired to store it at the wharves of Kelly & Co., at Tonawanda. He was unable to pay for the lumber, desired to purchase it upon credit, and the defendants

required him to give security for the payment of his notes that he proposed to give when he purchased the lumber. Frazer, on the said 18th of November, applied to the Kelly Company, through their agent, Mr. Silverthorn, and received a proposition from him that Kelly & Co. would lease to Frazer their dock upon certain terms for a period of years. Frazer thereupon entered into a contract with the defendants to purchase the lumber, and to give his notes therefor, and agreed as collateral security to said notes Kelly & Co. would give a wharf receipt, showing that the lumber had been delivered to and was held by them subject to the order of the defendants until the notes were paid, which would be within two months, Frazer agreeing to pay the dockage, piling, storage, insurance,—which insurance should be to the extent of the claim of the defendants, and loss, if any, payable to them as their interest might appear; and that the lumber was to be delivered by the defendants at the dock of Kelly & Co. On the 22d of November the manager of Kelly & Co., (Silverthorn,) the defendants, and Frazer, met at the office of the company in Tonawanda, and, after some negotiations in regard to the wharf receipts, four papers covering the lumber on the various vessels above named, each dated the 22d day of November, 1890, and a paper for each cargo, specifying the bill of lading of each cargo, respectively, were executed by Kelly & Co. and by the defendants, the language of which was as follows, omitting the name of the particular vessel and of the quantity of lumber upon each vessel:

"Tonawanda, N. Y., Nov. 22, 1890.

"Received from J. & T. Conlon, of Thorold, Ontario, lumber on the ————, as per bill of lading, ———— feet, which we hold subject to their order, and at their risk of fire and other natural causes. Lumber to be delivered on their order upon the following charges being paid to us, Kelly & Co.: Dockage, 10 c. per M. ft.; storage, 25 c. per M. ft., until the third day of April, 1891.

"A. P. & W. E. Kelly Co.,
"A. K. Silverthorn, Man'g'r.

"Accepted by J. & T. Conlon."

The language of these instruments was perfectly understood by the parties executing them, and the terms used discussed in the presence of Frazer. There was no mistake, surprise, or fraud in connection with these instruments, so far as their terms went. There was some discussion as to the effect of the instruments, which it is unnecessary to mention here. The lumber had all been delivered upon the company's docks, except the cargo of the barge Maggie, which had been delivered upon another dock, owned by Smith, Fassett & Co., for want of room upon the company's docks. The lumber delivered upon the company's docks was taken possession of by the company, and they had the oversight and care of it until the commencement of this action, which was the 18th of April, 1891. On the 26th of November, 1890, the company entered into a lease with Frazer, as they had agreed to do, whereby they leased to him for the period of five years, commencing the 15th day of April, 1891, for the annual rental of $2,000, to be paid quarterly in advance, the dock in question, where the lumber of the vessels, excepting the Maggie, had been stored. And this lease contained

a further provision as follows: "And it is further agreed that party of the second part [Frazer] shall have the use of premises until the 15th day of April, 1891, without rent, or any other part of our dock that he may require." Under this provision of the lease the company and Frazer both stored lumber upon the dock in question until the 15th of April, when the rent commenced. The defendants claim that at the time of the execution of what we will call the "wharf receipts," given to the defendants by Kelly & Co., the terms of the agreement between Frazer and the defendants were known to Kelly & Co., and that they understood that, as between Frazer and the defendants, Frazer was to pay the dockage and storage for this lumber. I think this position is borne out by the evidence. The defendants also claim that they did not know of the contract for a lease made between Silverthorn for the company and Frazer on the 18th of November. I think the evidence largely preponderates in favor of this contention. The defendants also claim that the real contract made with reference to this storage by Kelly & Co. of the lumber, to which Frazer assented, was that Kelly & Co. took the lumber as trustees for the defendants and Frazer, and were to hold it until Frazer had paid for the lumber and the storage, and then the lumber was to be delivered to Frazer. While the defendants' proof tends somewhat to establish this claim, the evidence altogether satisfies me that the real agreement was the one evidenced by the wharf receipts themselves, and that leads me to consider what the contract was as evidenced by these receipts. I think they will bear no other construction than that Kelly & Co. received this lumber as bailees for hire. They were to hold it from the 22d of November until the 3d of April. They were to be compensated for such holding at the rate of 35 cents per 1,000 feet. They were holding it for the defendants, not for Frazer; and the defendants, by accepting the terms under which the lumber was delivered and held, agreed thereby to pay the dockage and storage charges. This being the fair import of the contract, it cannot be varied by parol, in the absence of any of the equitable reasons which would permit this to be done. Though the defendants may have put a different construction upon these instruments at the time of their execution, they must still abide by the proper construction which the words of their contract and the subject-matter of it warrant. The defendants claim that the omission of Kelly & Co. to inform defendants, at the time of the execution of the wharf receipts, that they had verbally agreed with Frazer to give him the lease, was a fraudulent suppression of a material fact, which vitiated the wharf receipts, and entitled the defendants to a reformation of them, so as to express the contract between the parties as the defendants claim it really was. There was no evidence showing that this omission was intentional or fraudulent. The lease had not then been put in writing. Its particular terms were not defined. This was to be done in the future. Silverthorn gave a brief memorandum of the terms of the lease that should be prepared, embracing an alternative for

Frazer to accept or reject. It contained, however, no provision giving the possession of the dock to Frazer prior to April 15th. The lease, as executed, in no manner interfered with the defendants' lumber in terms, nor did Frazer or Kelly & Co. assume any obligation or duty with reference to the lumber in and by the lease itself, or in the memorandum for a lease. No damage or injury came or could come to the defendants as a consequence of the lease or the memorandum from this suppression of fact; therefore this contention of the defendants cannot be sustained, and no ground whatever exists for a reformation of the contract, or for equitable relief to the defendants. The rights of the parties must, therefore, be measured by the written contract. Before the commencement of this action, the plaintiffs herein became by assignment the owners of the cause of action set forth in the complaint. Neither Kelly & Co. nor the plaintiffs have received any compensation for the docking and storing of this lumber, except the cargo of the barge Maggie, which was paid by Frazer. The claim of the defendants that by means of the lease to Frazer a payment of the claim in suit to Kelly & Co. was worked, I do not think can be sustained. Kelly & Co. had the responsibility under their contract with the defendants of delivering the lumber to their order, and assuming the risk of its preservation, except as against fire and other natural causes. According to the defendants' theory, Kelly & Co. were to have no compensation for this care and responsibility, except as they might obtain it from Frazer, who had made no contract to pay them directly, and whom none of them seemed willing to trust. The plaintiff must have judgment for the amount demanded in the complaint, with interest from the commencement of this action, and costs. Judgment for plaintiff, with costs.